### GEORGE ELLIS & others *vs.* EDWARD PAGE & others.

A devise to an heir at law of exactly the same estate in land as he would take by descent without the devise is void, and the heir takes the land by descent.

A testator devised land to certain trustees, " in trust to pay over the net rents and income thereof to his son, C., during his life, and, on his decease, to convey in fee, and pay to his children, said houses and lots, or the proceeds thereof, in case they have been sold, and in default of such children, to convey and pay the same to his heirs at law;" and authorized the trustees to sell, at their discretion, any of the land so devised to them ; but no sale was ever made by them under this power, and C. died without issue. The personal estate of the testator was insufficient to pay debts and legacies. It was held, that the devise to the heirs at law of C. was not a specific devise, but that the land so devised was liable to be sold for the payment of debts and legacies, under the Rev. Sts. c. 71, § 20.

THIS was a bill in equity, brought by the executors of the last will of Ephraim Marsh. *J. Benjamin* and *W. Minot, Jr.*, submitted an argument in writing for those defendants who were legatees under the will. The other parties submitted the case without argument. The opinion of the court exhibits the whole case.

BIGELOW, J. This is a bill in equity in the nature of a bill of interpleader, brought by the executors of the last will and testament of Ephraim Marsh, against sundry persons, legatees and heirs at law of said Marsh.

The facts, as they appear by the bill, answers and documents in the case, are substantially as follows: Ephraim Marsh, the testator, died in the year 1837, leaving a will and

14*

codicil, which were duly proved and allowed, March 22, 1847. In and by said will, he devised a part of his real estate, in different proportions, to his children and other relations in fee, and a part to his executors, in trust for his children and other persons. Among that part of his real estate devised in trust, were four dwelling-houses in Fayette, and two lots of land in Knox Street, in Boston, which were given to said trustees " their heirs and assigns forever, in trust to pay over the net rents and income thereof to " his " son Charles Marsh during his life, and, on his decease, to convey in fee, and pay to his children said houses and lots, or the proceeds thereof, in case they have been sold; and in default of such children, to convey and pay the same to his heirs at law." The trustees had full power, by the will, to sell at their discretion any of the real estate devised to them in trust for said Charles Marsh, but no sale had been made by them of any part of it at the time of the death of Charles Marsh, the *cestui que trust*, which took place in August, 1849, he leaving no issue. The testator also gave to sundry persons pecuniary legacies, amounting in all to fifteen thousand four hundred dollars, none of which have been paid by the executors. The personal estate of the testator falls short of paying debts and legacies, in the sum of about twenty two hundred dollars. The bill further states that, in order to settle the estate, it is requisite, either that said legacies should be proportionably abated, or that the real estate devised to said trustees, in trust for said Charles Marsh for life, and on his decease without children to be conveyed in fee to the heirs at law, should be sold, and the proceeds applied, so far as may be necessary, to the payment of said legacies in full.

The bill prays that said legatees and heirs at law may interplead and settle their rights to said estate, under the direction of the court, and that the executors may be advised how to proceed in the settlement thereof.

The question, whether the real estate devised to said trustees, by the clause of the will above cited, can be sold to make up the deficiency of personal estate and to pay the legacies in full, depends on the construction to be given to

that part of the will.    If it is to be considered as a specific devise to the heirs at law, after the death of Charles Marsh, so that they take by the will, then it is very clear, that it cannot be sold to pay legacies, for the reason that lands, specifically devised, are not subject to be sold for the payment of specific legacies.    *Scott* v. *Scott*, 1 Eden, 458, 461; *Hubbell* v. *Hubbell*, 9 Pick. 561.    See also *Hays* v. *Jackson*, 6 Mass. 151.    But if the heirs at law do not take under the will by purchase, but take by descent as heirs, then so much of the real estate as is included in this devise would come within the provision of Rev. Sts. *c.* 71, § 20, and may be sold as undevised real estate, for the payment of said legacies.

It is a well settled rule of real property, that a limitation to an heir in a devise is void, and that the heir cannot be a purchaser; Co. Lit. 22 *b;* or, to state the rule more fully, if a man devises by his will his land to his heir at law and his heirs, in such case the devise, as such, is void, and the heir will take by descent and not by purchase, for the reason that the title by descent is the worthier and better title, by taking away the entry of those who might have a right to the land. Powell on Devises, 427, 430; 6 Cruise, Greenl. ed. 151; 1 Jarman on Wills, 67.    And it makes no difference as to the operation of this rule, that the land comes to the heir charged with payment of annuities or legacies, nor that the testator devises the land to one for life, remainder to his heir at law in fee, in which latter case the heir is in, on the termination of the life estate, by descent and not by purchase.    So, too, it has been held, that the limitation to the heir, by devise in fee, after an estate tail, or the ingrafting of an executory devise, or the carving out of a contingent interest, or the limiting of the reversion in fee, or the alternate fee, to the heir at law, will not break the descent, and that when the estate devolves to the heir, he takes by descent and not by purchase.    Powell on Devises, 427, 430; 1 Jarman on Wills, 67; Fearne's Post. Works, 128, 229; 1 Eden, 462 note; *Doe* v. *Timins*, 1 B. & Ald. 530; *Manbridge* v. *Plummer*, 2 Myl. & K. 93.

This rule of law, established in England by a long series of judicial decisions, was altered by statute of 3 & 4 William

4, *c.* 106.    But it has been fully recognized as the common law of this state, and has not been changed by statute.  *Parsons* v. *Winslow*, 6 Mass. 178;  *Whitney* v. *Whitney*, 14 Mass. 90.

There would have been no difficulty in the application of this rule to the devise in question, if the estate had been given to the trustees for the life of Charles Marsh, and, on his decease without issue, then in fee to the heirs at law.   It would then have come within the letter of the rule.    But the devise in this case was to the trustees and their heirs, who, on the death of the *cestui que trust* without children, are to convey the estate in fee to the heirs at law.    Does this so change the estate which the heirs take, or so break the descent, that the rule is inapplicable to this devise ?    In considering this question, it is to be remembered, that one of the great tests, by which to try the application of the rule, is to ascertain whether the tenure or quality of the estate which the heirs take is changed by the devise, *i. e.*, whether they take an estate different in quantity or quality from that which they would have taken if the estate had not been devised, but had been left to descend to them.   Fearne's Post. Works, 229. Apply this test to the estate which the heirs at law take in this case on the death of Charles Marsh without issue.    They take a fee simple, precisely what they would have taken, if no will had been made.    Perhaps a clearer test is given by Chancellor Kent, who says: " Strike out the particular devise to the heir, and if, without that, he would take by descent exactly the same estate which the devise purports to give him, he is in by descent and not by purchase."    4 Kent Com. (6th ed.) 507.    Now it is very clear, that, on the conveyance by the trustees of the estate in question to the heirs at law in fee, as provided by the will; the heirs will take exactly what they would have taken if no will had been made.

On looking into the will, it is manifest that the testator intended, in case Charles Marsh died without issue, his heirs at law should at once take the estate in question equally in fee.    But as it might become necessary, during the life of the *cestui que trust*, to sell some portion or all of the real estates devised in trust, the testator gave to the trustees a power to

sell at their discretion, directing them, on the death of the *cestui que trust*, "if the estates shall have been sold," to pay the proceeds to the heirs at law, otherwise to convey to them in fee. The main purpose in devising the estates to the trustees and their heirs was, to enable them to execute this power of sale, if necessary, and convey a good title to the premises. As this power of sale was not exercised by the trustees during the life of Charles Marsh, as it was to have been, if exercised at all, it would not perhaps be a very forced construction to say that, after his death, the devise came within those cases where it has been held that a devise to trustees and their heirs may be construed so as to vest only a life estate in the trustees. *Doe* v. *Hicks*, 7 T. R. 433; *Curtis* v. *Price*, 12 Ves. 89.

But without deciding this point, and assuming that, on the death of Charles Marsh without issue, the legal estate was still in said trustees, yet they held it only to convey it in fee to the heirs at law. The main purpose of the devise in trust had been accomplished. The heirs have the entire absolute interest in the estate, and can compel the trustees to convey the legal estate to them. 1 Cruise, Greenl. ed. 418. The result is, therefore, the same as it would have been if the estate of the trustees had only been an estate *pour autre vie*, remainder to the heirs at law in fee. The equitable estate being thus vested in the heirs at law with a right to an immediate conveyance of the legal estate in fee, we see no good reason why it should not be subject to all the legal incidents to which it would have been liable, if both the legal and equitable estates had been directly vested in the heirs at law by the terms of the devise. It has been often held to be of the utmost importance to preserve a strict analogy between legal and equitable estates, in all respects, for the reason that it would destroy the whole harmony of the laws of real property, if the legal estate was subject to one set of rules and the equitable estate to another. *Wykham* v. *Wykham*, 18 Ves. 423, note. *A fortiori* is this important and necessary, when the entire equitable estate is in the same persons who have also the immediate right to the legal estate.

On these principles, we think the real estates included in

this devise cannot be considered as lands specifically devised by the will, but that they fall within the provisions of the Rev. Sts. c. 71, § 20, and are liable to be sold for the payment of legacies. This conclusion, we are satisfied, carries out the intent of the testator, while at the same time it conforms to the rules of law                    *Decree accordingly.*